IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL | § | |
| CORPORATION | § | |
| | § | |
| VS. | § | ACTION NO. 4:02-CV-319-Y |
| | § | |
| H. WAYNE POSEY, ET AL. | § | |

ORDER GRANTING DEFENDANT BUYSSE'S MOTION TO DISMISS

Pending before the Court is the Motion to Dismiss Defendant Charles J. Buysse, Jr., M.D., Under Rule 12 for Lack of Personal Jurisdiction [document number 127]. After review of the motion and related briefs, the Court concludes that the motion should be granted.

I. Facts

Plaintiff General Electric Capital Corporation ("GECC") brought this suit against various officers and directors of ProMedCo Management Corporation ("ProMedCo"), alleging a claim for negligent misrepresentation. ProMedCo was a medical-services company that managed the business aspects of and provided administrative services to health-care practices in nonurban markets. GECC contends that, in June 2000, it entered into a credit agreement with ProMedCo under which it loaned ProMedCo twenty million dollars. Less than a year later, ProMedCo filed for bankruptcy protection.

GECC contends that in deciding to make the loan to ProMedCo, it relied upon ProMedCo's representations about its financial condition. GECC reviewed financial reports and other documents supplied by ProMedCo's management. These documents represented that

ProMedCo's 1999 earnings before interest, taxes, depreciation and amortization ("EBITDA") was 44.6 million dollars, when in actuality it was, according to GECC, between 16.2 and 28.8 million dollars. GECC contends that this overstatement was the result of improper internal accounting with respect to several transactions, which accounting was subject to the oversight and control of ProMedCo's officers and directors.

Charles J. Buysse, Jr. ("Buysse") was an officer of ProMedCo during the relevant time period.  Buysse is a resident of Naples, Florida.  Although he traveled to Texas for ProMedCo's board meetings, he contends he has few other contacts with the state.  As a result, Buysse asserts that he is not subject to this Court's jurisdiction and seeks dismissal of GECC's claim against him under Federal Rule of Civil Procedure 12(b)(2).

## II.  Personal Jurisdiction

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  Because this Court is deciding the matter without an evidentiary hearing, the plaintiff may meet his burden by presenting a *prima-facie* case for personal jurisdiction.[1]  *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).  "[U]ncontroverted allegations in the plaintiff's

---

[1]In making its determination, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Spademan*, 772 F.2d at 1192.

complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcyle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

Generally, in a diversity-jurisdiction suit such as this one, a federal court has personal jurisdiction over a nonresident to the same extent as a state court in that forum. *See Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir. 1990). Because the Texas long-arm statute extends personal jurisdiction to the constitutionally permissible limits of due process, this Court need determine only whether personal jurisdiction may be asserted within the constraints imposed by the United States Constitution. *See Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 294 (5th Cir. 1999); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). This Court's exercise of personal jurisdiction over a nonresident defendant will not violate due process if (1) the nonresident defendant has purposefully availed himself of the benefits and protections of Texas law by establishing minimum contacts with the state, and (2) traditional notions of fair play and substantial justice are not offended by the exercise of that jurisdiction. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 112 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Under the minimum-contacts analysis, the plaintiff may allege either specific or general personal jurisdiction. Specific jurisdiction exists when the defendant's contact that is said to support jurisdiction is directly related to the cause of action.

*See Marathon Oil*, 182 F.3d at 295; *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc*., 9 F.3d 415, 418-19 (5th Cir. 1993).  For the forum to properly assert specific personal jurisdiction over a nonresident defendant, the defendant must have purposefully directed his activities at the residents of the forum, and the litigation must result from alleged injuries that arise out of or relate to the defendant's activities directed at the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1984).  A single contact with the forum state can be sufficient to support specific jurisdiction.  *See Ruston Gas Turbines, Inc.*, 9 F.3d at 419.  General jurisdiction exists "when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial."  *Marathon Oil*, 182 F.3d at 295.

If the Court determines that the nonresident defendant has minimum contacts with the state, it must then determine whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316.  The fairness of exercising jurisdiction is determined by balancing several factors.[2]  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  "For consideration of 'traditional notions of fair play and substantial justice' to preclude the exercise of jurisdiction, a defendant 'must present a compelling case' that the exercise of

---

[2]These factors include: (1) the burden on the defendant; (2) the forum state's interest in pursuing the litigation; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the share interest of the several states in furthering fundamental substantive social policies.  *See World-Wide Volkswagen*, 444 U.S. at 292; *Ruston Gas Turbines*, 9 F.3d at 421.

jurisdiction would be unreasonable in light of the surrounding circumstances." *Amoco Chem. Co. v. Tex Tin Corp.*, 925 F. Supp. 1192, 1200 (S.D. Tex. 1996) (quoting *Burger King Corp.*, 471 U.S. at 477).

<u>III.  Analysis</u>

<u>A.  General Jurisdiction</u>

GECC first contends that Buysse's contacts with Texas are sufficiently systematic and continuous for this Court to exercise general jurisdiction over him. GECC alleges that "Buysse was employed by a Texas company, served on the board of directors of another Texas company, traveled to Texas regularly on business, communicated frequently with business associates in Texas, and owned a limited partnership interest in real property in Texas." (GECC's Resp. at 6.)

Regarding Buysse's alleged employment with a Texas company, the Court concludes that GECC has failed to present competent proof of this disputed contention.  In 1997, ProMedCo of Southwest Florida, Inc. ("ProMedCo-SWF"), a subsidiary of ProMedCo, purchased the assets of the Naples Medical Center, P.A. ("NMC"), a Florida professional corporation, and began providing management services to NMC.  GECC contends that as a result of this agreement, Buysse, a physician for NMC, became an employee of ProMedCo-SWF.  GECC asserts that ProMedCo-SWF was a Texas corporation because it "had its principal place of business in Fort Worth, Texas." (GECC Resp. at 3.)  In support of that contention, GECC cites certain "Uniform Business Reports" included in its appendix. (GECC Resp. at 3, n. 9.)  Buysse objects

to the Court's consideration of those reports, however, on the grounds that they are not authenticated. Because the documents are not authenticated and do not appear to be self-authenticating, the objection is sustained. *See* Fed. R. Evid. 901 & 902. Thus, GECC has failed to present proof that ProMedCo-SWF was a Texas company.

Furthermore, GECC has failed to demonstrate that Buysse became an employee of ProMedCo-SWF after that company entered into the agreement with NMC. Indeed, the service agreement between ProMedCo-SWF and NMC reflects that NMC retained "complete control of and responsibility for the hiring, compensation, supervision, evaluation and termination of its Medical Professionals." (Buysse's App. in Supp. of Reply Br. at 16, ¶ 4.2.) Thus, under the terms of the parties' agreement, Buysse remained an employee of NMC.[3]

GECC also contends that Buysse "traveled to Texas regularly for business." (GECC's Resp. at 1, 6.) All but one of those trips appear, however, to have been in Buysse's capacity as a member of ProMedCo's board of directors. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) ("an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation"); *Forsythe v. Overmeyer*, 576 F.2d

---

[3]Buysse confused the issue during his deposition, in which he stated that he "believe[d]" he became an employee of ProMedCo-SWF after it entered into the service agreement with NMC. *(*GECC's App. at 3, 15:16-22. ) He later stated in the deposition, however, that he was not certain whether his paychecks "were . . . on the letterhead . . . or the heading of [ProMedCo-SWF]." (GECC's App. at 3, 16:2-5.) And, Buysse's supplemental affidavit submitted in support of his reply brief clarifies that he "was not employed by [ProMedCo]-SWF" and his contrary belief at his deposition was erroneous. (Buysse's App. in Supp. of Reply at 2, ¶¶ 6, 8.)

779, 783-84 (9th Cir. 1978) ("[A] corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum."). The only other trip to Texas Buysse made was when NMC and ProMedCo-SWF were negotiating their 1997 agreement. Buysse testified that at that time, he made one trip to Texas of less than one week with some of his "fellow NMC directors or officers." (GECC's App. at 5, 21:13-15.) That trip appears to have been made by Buysse in his capacity as an officer of NMC, rather than in his individual capacity, for the purpose of inspecting ProMedCo's operations prior to consenting to the 1997 agreement. (GECC's App. at 4, 20:21-24; 5, 22:14-25.) GECC has presented no evidence tending to demonstrate that Buysse regularly traveled to Texas for his own personal business or that the trips in his capacity as director of either ProMedCo or NMC may be considered for purposes of establishing jurisdiction over Buysse.

Finally, GECC contends that Buysse "communicated frequently with business associates in Texas, and owned a limited partnership interest in real property in Texas." (GECC's Resp. at 6.) As for the so-called frequent communications with associates in Texas, the evidence GECC cites to support that contention simply does not support it.[4]

---

[4]GECC contends that "[f]rom 1997 to 2001, Buysse communicated frequently with ProMedCo officers and directors in Fort Worth, Texas, traveled regularly to Fort Worth, Texas to attend board of directors meetings, participated on a policy council, and voted on every single issue presented to the board of directors." (GECC Resp. at 2-3.) In support of that proposition, GECC cites to "Buysse Deposition at 28:11-34:18 (App. 006-008)." (GECC Resp. at 3, n.5.) The Court has thoroughly reviewed these pages of Buysse's deposition, however, and finds no support for GECC's contention that Buysse communicated frequently with business associates in Fort Worth. Furthermore, the Court discerns no admission in the cited pages of testimony that Buysse voted on every single issue presented to the board of directors. Finally, the "policy council" on which Buysse participated appears to have been a council of NMC, not ProMedCo. Buysse testified that  the council included "members of the [NMC] board and also the

And, regarding the limited partnership interest in Texas real property, Buysse testified that "it was a land deal in--for land someplace in the Dallas area," (GECC's App. at 2; 8:7-8), but that he sold that interest in 2001.  The Court concludes that this contact is insufficient to warrant the exercise of general jurisdiction over Buysse.  *See Constr. Aggregates Inc. v. Senior Commodity Co.*, 860 F. Supp. 1176, 1179-80 (E.D. Tex. 1994) (concluding that an interest in a limited partnership that owned and commercially operated real property in Texas provided an insufficient basis for exercising general personal jurisdiction over the limited partner).  GECC has failed to demonstrate, *prima facie*, that Buysse's contacts with the state of Texas were sufficiently continuous, systematic, and substantial to warrant this Court's exercise of general personal jurisdiction over him.

B.  Specific Jurisdiction

GECC next contends that this Court may exercise specific personal jurisdiction over Buysse because he committed a tort within the state of Texas.  Under Texas law, Buysse is deemed to be doing business in the state if he "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997).  Specifically, GECC notes that its "[v]erified [c]omplaint alleges that: (1) ProMedCo is a Texas company with its headquarters in Fort Worth, Texas; (2) ProMedCo's officers and directors--including Buysse--negligently

representatives from the ProMedCo company.  One of the ProMedCo--one or two of them would come to Naples for the meetings." (GECC App. at 6; 28:11-17.)  The Court fails to discern how Buysse's participation on this council helps GECC in the jurisdictional analysis.

misrepresented the company's financial condition; (3) GECC relied on that negligent misrepresentation in extending a loan to ProMedCo; and (4) GECC suffered damages when ProMedCo defaulted on the loan." (GECC Resp. at 10.)

Initially, the Court notes that GECC has incorrectly character-ized the contents of its pleading.  Although GECC repeatedly refers in its response brief to ProMedCo as a Texas company, its pleadings actually admit that ProMedCo is "a Delaware corporation with its principal place of business located in Fort Worth, Texas."  Thus, rather than being chartered under the laws of the State of Texas, ProMedCo was, according to GECC's own allegations, chartered under the laws of the State of Delaware.  This is an important distinction.  In *Rittenmeyer v. Grauer*, 104 S.W.3d 725 (Tex. App.--Dallas 2003), the Texas Court of Appeals recognized that "'excellent reasons exist for allowing a State to assert jurisdiction over nonresident directors of domestic corporations.  A chartering State has a strong, even compelling interest in providing a forum for redressing harm done by corporate fiduciaries, harm endured principally by a resident of that State, the corporation.'"  *Id.* at 732 (quoting *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (5th Cir. 1987)). The court concluded, however, that the state of the corporation's principal place of business did not have such compelling interests: "[t]he mere fact that a Delaware corporation had its headquarters in Texas at the time of the allegedly wrongful act is not sufficient minimum contacts to give Texas courts personal jurisdiction over a nonresident director who commits a tort against the corporation."

*Id.* at 733.

Thus, in order to demonstrate that Buysse had minimum contacts with Texas, GECC cannot simply rely on the fact that Buysse was a director of a corporation with its principal place of business in Texas, but instead must tie Buysse's allegedly tortious conduct to the forum.  GECC's verified complaint contains no such allegations.  Although the complaint alleges that the improper accounting treatment of EBITDA was subject to the oversight and control of the board of directors, there is no specific allegation in the complaint about where that oversight and control, or lack thereof, occurred.  Indeed, the complaint is completely silent regarding the location of Buysse's allegedly tortious conduct or the place of the injury he allegedly inflicted.[5]

GECC's response to Buysse's motion contends that the misrepresentations upon which it relied were "contained in SEC filings signed by Buysse." (GECC's Resp. at 10.)  No allegations are made, however, that Buysse signed those filings in Texas, that the documents were filed with the SEC in Texas, that they were provided to GECC in Texas, or even that GECC relied on them to its detriment in Texas.  GECC also alleges that "Buysse attended board meetings in Texas where he received presentations regarding ProMedCo's finances and where those finances were discussed and voted on." (GECC's Resp. at 10.)  Again, however, the evidence GECC cites in support of this contention simply

---

[5]Regarding this latter point, the Court notes that GECC alleges in its complaint that it "is a Delaware corporation with its principal place of business located in the state of Connecticut."  (GECC's Verified Compl. at 2, ¶ 3.)

does not support it.[6] Finally, citing the same evidence, GECC alleges that "Buysse's failure to use due care in determining the accuracy of the financial information in the company's public accounting reports occurred during those board meetings in Texas." (GECC's Resp. at 10.)  GECC has failed, however, to present evidence demonstrating that the financial information in the company's public accounting reports upon which GECC allegedly relied was actually presented to, discussed by, or approved by Buysse at the board meetings in Texas.

The Seventh Circuit Court of Appeals was presented with a similar situation in *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712 (7th Cir. 1998).  In that case, creditors brought suit against former members of the board of an insolvent corporation for, *inter alia*, negligent misrepresentation, contending that the board members "caused or permitted false, incomplete, or misleading financial

---

[6]In support of this contention, GECC cites "Buysse Deposition at 44:3-44:25 (App. 009); 51:4-54:16 (App. 010-011)."  (GECC Resp. at 10, n. 37.) Contrary to GECC's representation, however, the vast majority of this deposition testimony has absolutely nothing whatsoever to do with ProMedCo's board meetings.  In fact, the only mention of board meetings made during the entirety of this testimony is as follows:

> Q.   At any of the board of directors meetings, did you have any discussions concerning the extension of a loan for $20 million by [GECC] to ProMedCo?
>
> A.   I don't recall.
>
> Q.   Did you ever ask any questions of Mr. Smith or Mr. Posey or anybody else from ProMedCo management at a board meeting about any of the financial transactions or acquisitions that were--that ProMedCo was going to engage in or had engaged in?
>
> . . . .
>
> A.   Not to the best of my recollection.

(GECC App. 11, 53:8-11.)   This exchange certainly does not support GECC's contention that, at the board meetings held in Texas, Buysse received presentations regarding ProMedCo's finances, discussed those presentations, and then voted on those matters.   GECC shall take care to more accurately characterize its evidence in future briefs submitted to this Court.

statements to be given to [the creditors] to induce [them] to continue to supply . . . products and extend credit to the corporation." *Id.* at 713.  The corporation "was a Delaware corporation headquartered in Brookfield, Wisconsin." *Id.*  The director-defendants were California citizens, and their "only contact with Wisconsin, the forum state, was their attendance at [b]oard meetings." *Id.*

The Seventh Circuit concluded that specific personal jurisdiction over the nonresident director-defendants was lacking.  The court noted that to demonstrate the existence of specific jurisdiction, the creditors' "claims must connect to [the directors'] contact with Wisconsin, i.e. [the creditors'] claims must arise from or relate to [the directors'] activities at the Wisconsin [b]oard meetings." *Id.* at 714.  The court noted that "[a]lthough the complaint alleges that the defendants 'attended [b]oard meetings at which the financial condition of [the corporation] was discussed and analyzed,' the complaint does not allege that these meetings took place in Wisconsin." *Id.* at 715.  And, there was testimony that the board meetings took place in both Wisconsin and Illinois.  Thus, the court concluded that "[b]y alleging only that the defendants attended '[b]oard meetings,' without specifying where these meeting[s] took place *or the content of the meetings that might support their claims*, [the creditor] has not established the requisite connection between the defendants' activities and the forum."[7] *Id.* "Specific jurisdic

----

[7] The court recognized that "a complaint need not include facts alleging personal jurisdiction." *Id.* at 715.  But, "a plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction over the defendants once defendants move to dismiss for lack of personal jurisdiction." *Id.*  The court concluded that the creditors "ha[d] failed to establish a prima

tion cannot lie without a connection between the defendants' Wisconsin activity and the claims alleged in the complaint."  *Id.*

Although the board meetings that Buysse attended were admittedly all in Texas, GECC has failed to sufficiently tie the content of those meetings or Buysse's conduct at those meetings to the negligent misrepresentation claim against him so as to give rise to specific personal jurisdiction.  There is no proof that the matters presented and discussed at the Texas board meetings or Buysse's conduct at those meetings contributed in any way to the alleged misrepresentations about EBITDA upon which GECC relied in making the loan to ProMedCo. For these reasons, the Court concludes that GECC has failed to demonstrate, *prima facie*, that its lawsuit arises out of or relates to Buysse's contacts with Texas; as a result, specific personal jurisdiction is lacking.

## IV.  Conclusion

Buysse's Motion to Dismiss for Lack of Personal Jurisdiction [document number 127] is GRANTED.  GECC's claims against Buysse are hereby DISMISSED WITHOUT PREJUDICE to their refiling in an appropriate forum.

SIGNED March 20, 2006.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

facie case for personal jurisdiction, through either the allegations of the complaint or other evidence in the record."  *Id.*